UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00375-RSE

**NIGEL S.**                                                                                                          **PLAINTIFF**

VS.

**FRANK BISIGNANO,**
*Commissioner of Social Security*                                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Claimant Nigel S.'s ("Claimant's") applications for supplemental security income and disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 12; DN 13). The Commissioner filed a responsive Fact and Law Summary. (DN 15). Claimant filed a reply. (DN 16). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10; DN 11).

### I. Background

Nigel S. ("Claimant") applied for supplemental security income benefits under Title XVI and disability insurance benefits under Title II on July 30, 2022, alleging disability beginning September 18, 2015. (Transcript, hereinafter, "Tr." 230-59). He alleged disability due to back and neck problems, restless leg syndrome, anxiety disorder, stomach ulcers, and blood clots. (Tr. 289). Claimant's applications were denied at both the initial and reconsideration levels. (Tr. 143-60).

At Claimant's request, Administrative Law Judge Dennis Pickett ("ALJ Pickett") conducted a remote administrative hearing on December 21, 2023. (Tr. 47). Claimant appeared by phone with his attorney. (*Id.*). An impartial vocational expert also participated. (*Id.*). Claimant provided the following relevant testimony during his hearing.

Claimant endures back and neck pain that shoots all the way down to his hands, arms, and the bottom of his feet. (Tr. 53). He has numbness and tingling, extending down his legs every day, throughout the day. (Tr. 54). After stretching in the morning, he gets a few hours of relief from the numbness, but it eventually comes back. (*Id.*). He opines that he can stand or walk for about 25 minutes before needing to sit down. (Tr. 55). Once sitting, he would need about 40 minutes before getting back up. (*Id.*). The numbness also extends to his hands, requiring him to stretch them out, which provides some relief. (Tr. 61). He recently received injections in his neck that helped his pain, which he plans to continue. (Tr. 67).

Claimant spends most days in bed due to his pain. (Tr. 56). He states he can complete chores, like cleaning out the fridge or mopping the floor, but cannot perform more than one of these chores in a day. (Tr. 60). After thirty minutes of tidying up the house, Claimant needs a break. (*Id.*). He shops for food but has his nephew bring the groceries inside. (Tr. 65). Other than shopping for food and attending doctor's appointments, Claimant does not leave his house. (Tr. 66). Though Claimant says he suffers from anxiety and depression about what he is unable to do and what he is missing when he is stuck in bed with pain, he has received no formal treatment for either anxiety or depression. (Tr. 57, 68).

On February 26, 2024, ALJ Pickett issued an unfavorable decision. (Tr. 17-34). Applying the five-step sequential analysis for adult disability claims from 20 C.F.R. § 404.1520(a), ALJ Pickett made the following findings. First, Claimant has not engaged in substantial gainful activity

since September 18, 2015, the alleged onset date. (Tr. 23). Second, Claimant has the severe impairments of degenerative disc disease of the lumbar and cervical spine, cancer in the left kidney, stomach ulcers, anxiety, and depression. (Tr. 23-24). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 24-25). Fourth, Claimant has the residual functional capacity to perform "light work" as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

> Occasional climbing of ladders, ropes, or scaffolds; climbing of ramps and stairs; stooping, kneeling, crouching, and crawling. He can have occasional exposure to vibrations. He can have occasional exposure to unprotected heights and dangerous machinery. He can understand, remember, and carry out simple instructions over a routine workday and workweek. He can have occasional interaction with supervisors, coworkers, and the public. He can adapt to routine workplace changes, set realistic goals, and make plans independently of others.

(Tr. 25-32). Additionally, at Step Four, ALJ Pickett found Claimant cannot perform any of his past relevant work. (Tr. 32-33). Fifth and finally, considering the Claimant's age, education, work experience, and RFC, ALJ Pickett determined there were jobs that exist in the national economy that Claimant can perform. (Tr. 33-34).

ALJ Pickett concluded Claimant was not under a disability, as defined in the Social Security Act, from September 8, 2022, through the date of the decision. (Tr. 34). Claimant appealed ALJ Pickett's decision. (Tr. 227-28). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Pickett's decision. (Tr. 11-14). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III. Conclusions of Law

Claimant presents one claim of error from ALJ Pickett's decision. He alleges that ALJ Pickett did not properly consider his subjective complaints of pain and limitations in violation of Social Security Ruling 16-3P. (DN 13, at PageID # 1416-17).

As part of the RFC assessment at Step Four, an ALJ must evaluate a claimant's subjective allegations of pain. 20 C.F.R. §§ 404.1520c, 404.1529(a). An ALJ must consider all "symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). First, the ALJ must determine whether there are medically determinable impairments that could reasonably be expected to produce the alleged symptoms. Next, if such impairments exist, the ALJ "will consider [the claimant's] statements about the intensity, persistence, and limiting effects of [the] symptoms" and "evaluate [the claimant's] statements in relation to the objective medical evidence and other evidence" in determining whether a claimant is disabled. *Id.* § 416.929(4). In doing so, the ALJ evaluates the claimant's statements against factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), including:

(1) A claimant's daily activities;

(2) The location, duration, frequency, and intensity of pain and other symptoms;

(3) Factors that precipitate and aggravate the symptoms;

(4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

  (6) Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

  (7) Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors and may discuss only those relevant to the alleged symptoms. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

  The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 510304, at *10. But the ALJ need not use "magic words" so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *Lloyd v. Comm'r of Soc. Sec.*, No. 5:23-CV-01166-SL, 2024 WL 2278251, at *14 (N.D. Ohio Apr. 30, 2024). An ALJ's conclusions regarding subjective symptom evidence receive great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

  ALJ Pickett, according to Claimant, "completely failed to address [Claimant's] sworn hearing testimony in his subjective symptom analysis" and instead limited his discussion to Claimant's basic allegations from his function reports. (DN 13, at PageID # 1418). Relying on *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994), Claimant argues ALJ Pickett's discussion of only the function reports in the credibility analysis "is insufficient" because ALJ Pickett did not analyze his hearing testimony elsewhere in his decision. (*Id.* at PageID # 1418-19). Also missing from ALJ Pickett's analysis, Claimant submits, is any consideration of the mandatory factors from SSR 16-3p for evaluating a claimant's subjective symptoms. (*Id.* at PageID # 1420). Claimant concludes ALJ Pickett's failures deprived him of a fundamental component of the disability

evaluation process. (*Id.*). Because consideration of Claimant's sworn hearing testimony under SSR 16-3p could have resulted in greater limitations in the RFC, Claimant maintains ALJ Pickett's error cannot be considered harmless. (*Id.* at PageID # 1422).

The Commissioner responds that ALJ Pickett's analysis of Claimant's subjective complaints is supported by substantial evidence. (DN 15, at PageID # 1430-31). Per the Commissioner, ALJ Pickett reasonably concluded that Claimant's course of intermittent and conservative treatment did not support his allegations of disabling symptoms. (*Id.* at PageID # 1430-31). The Commissioner highlights ALJ Pickett's consideration of Claimant's objective medical evidence, unremarkable mental status examinations, unremarkable imaging, and routine daily activities. (*Id.* at PageID # 1431-34). The Commissioner further asserts that the regulations do not require an ALJ to summarize a claimant's hearing testimony to show he considered it in his determination. (*Id.* at PageID # 1435). SSR 16-3P also, the Commissioner argues, makes clear that an ALJ can consider a claimant's subjective reports that are made directly to an ALJ *or* "directly to medical sources" or "other sources." (*Id.* at PageID # 1436).

In reply, Claimant emphasizes that the evidence introduced at the hearing level is integral to the regulations governing the administrative process. (DN 16, at PageID # 1440-41). Claimant explains that his testimony cannot be ignored as "not significantly different from his reports to providers or the statements provided in function reports" because the details he provided at the hearing are crucial to his case and are not otherwise contained in any written accounts. (*Id.* PageID # 1442-43). Had the ALJ considered and credited his hearing testimony that he is "in bed most days," has daily hand numbness, has difficulty walking and standing more than 25 minutes, and needs to rest after 40 minutes of sitting, Claimant asserts the job base relied on at Step Five would have been significantly eroded or eliminated. (*Id.*). Additionally, Claimant argues the

Commissioner's reliance on his daily activities to justify discounting his limitations was a misrepresentation of the evidence and the Commissioner mischaracterized the objective medical evidence. (*Id.* at PageID # 1444).

Claimant is correct that ALJ Pickett failed to reference any of Claimant's testimony from the December 2023 administrative hearing in his decision. But it is well established that an "ALJ can consider all of the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense-Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)). Put otherwise, "[t]here is a difference between what the ALJ must consider versus what he must discuss." *Escobar v. Kijakazi*, No. 3:21-cv-372, 2023 WL 2769090, at *3 (E.D. Tenn. Mar. 31, 2023). An ALJ's failure to discuss a claimant's hearing testimony, accordingly, is not *per se* error, as Claimant alleges. *See Henman v. Comm'r of Soc. Sec.*, No. 18-cv-10940, 2019 WL 4866146, at *6 (E.D. Mich. July 8, 2019); *Escobar*, 2023 WL 2769090, at *3. As one court has noted, "[t]o the contrary, it is axiomatic that the ALJ considered all of the [p]laintiff's hearing testimony, as he is the ALJ that presided over the administrative hearing." *Henman*, 2019 WL 4866146, at *6.

Claimant cites to the Sixth Circuit's decision in *Felisky* to argue that an ALJ's cursory assessment, with no reference to a claimant's sworn hearing testimony is insufficient "where an analysis of Plaintiff's hearing testimony is not present elsewhere in the decision." (DN 13, at PageID # 1418-19). Yet in that case, the court determined that substantial evidence did not exist to support the ALJ's decision to discount the claimant's credibility and that the ALJ did not apply the full test from the regulations for evaluating subjective complaints of pain. *Felisky*, 35 F.3d at 1040-41. This case is distinguishable from *Felisky* because ALJ Pickett considered the evidence

8

as a whole to reach his conclusion and, in doing so, appropriately considered the applicable factors from SSR 16-3p.

ALJ Pickett recounted evidence Claimant provided in his function reports dated October 11, 2022 and June 17, 2023. (Tr. 26-27 (citing Tr. 298-305; 331-338)). In doing so, ALJ Pickett discussed the following:

> The claimant states that he is unable to work due to muscle fatigue and balance issues (Exhibits B4E, B12E). He has discomfort with sitting and standing. The claimant lives alone and cares for his cat. He has some limitations on completing personal care tasks. For example, he dresses mostly from a seated position. He prepares simple meals. He does laundry, sweeps the floor, and washes dishes. He does not do yardwork. He does not go out often and avoids people as much as possible. He drives and is able to go out alone. He shops for groceries and household items about every 10 days. He notes limits on lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, task completion, concentration, and using hands. He also states that anything over 18 pounds or so is past pushing the limits. He has some difficulty handling stress, but he can handle changes in routine. In his updated report, he specifically noted that his problems are not mental, they are all physical (Exhibit B12E/1). He also noted that he no longer had limits in the areas of memory or concentration (Exhibit B12E/6). He states he has used a cane since February 2023 due to balance issues (B12E/7). In the summary section, he indicated that he cannot work due to cervical, thoracic, and lumbar spine injuries. (*Id.*).

(*Id.*). Much of this evidence is substantially similar to testimony he offered at his administrative hearing. (*Id.*). For instance, statements in his function reports on his ability to complete some household chores and shop for food, while being limited in sitting, walking, and standing, mirror the testimony he provided at his December 2023 hearing. (*See* Tr. 55-68). This evidence included Claimant's statements as to his daily activities, the pain he experiences, and physical limitations from this pain, touching on factors (1) and (3) from SSR 16-3p.

After considering the evidence from Claimant's function reports, ALJ Pickett determined that while Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Claimant's statements concerning the intensity, persistence, and limiting

effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 27). ALJ Pickett then went on to thoroughly discuss the objective medical evidence of record and weigh the medical opinions and the third-party report of Claimant's mother. (Tr. 27-32). In this discussion, ALJ Pickett addressed other factors from SSR 16-3p, including Claimant's reports of pain, numbness, and weakness; prescription medications; and other forms of treatment (physical therapy, referral to surgery, pain management, a home spine conditioning program, and lumbar injections). Ultimately, ALJ Pickett found that Claimant's "relatively normal physical and mental examination findings, conservative treatment, and mild findings on imaging" did not support work-related limitations in the RFC beyond "a limitation for a reduced range of light exertion work" and "limitations to understanding, remembering, and carrying out instructions over a routine workday and workweek and occasional interaction with supervisors, coworkers, and the public." (Tr. 32).

ALJ Pickett's analysis, which provides specific reasons for discounting Claimant's allegations that align with the factors from SSR 16-3p, permits the Court to trace ALJ Pickett's reasoning for discounting Claimant's subjective symptoms.

That some of Claimant's hearing testimony was not in the function report and not recounted by ALJ Pickett does not result in error. Claimant takes specific issue with ALJ Pickett not discussing his allegation that he spends most days in bed. But the same objective evidence ALJ Pickett found to be inconsistent with his other subjective reports is equally inconsistent with his reports that his pain confines him to his bed. Claimant's ability to complete some chores, drive, and grocery shop, as well as his normal exam findings, conservative treatment, and unremarkable imaging, do not support the extent of his subjective allegations. Claimant merely surmises that consideration of this testimony and other testimony from his hearing would have resulted in greater

limitation but fails to show how this evidence would result in any further work-related limitations in light of the substantial evidence relied upon by ALJ Pickett. Thus, ALJ Pickett's failure to discuss this specific testimony did not result in error.

## IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:    Counsel of Record